820 F.2d 1220
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Harry J. SMITH, Jr.; Norma D. Smith; James Meers;
Florence Meers; Charles A. Gambrill, Jr.; John M.
Gambrill; Monica C. Gambrill; Peter R. Gambrill; Richard
J. Gambrill; Stephen F. Gambrill; Trust for Benefit of
Monica C. Gambrill, Elmo H. Denton, H.M. Ammerman, Trustees;
Trust for Benefit of Peter R. Gambrill, Elmo H. Denton,
H.M. Ammerman, Trustees; Trust for Benefit of Richard J.
Gambrill, Elmo H. Denton, H.M. Ammerman, Trustees; Trust
for Benefit of Stephen Gambrill, Elmo H. Denton, H.M.
Ammerman, Trustees; Trust for Benefit of Charles Gambrill,
Jr., Elmo H. Denton, H.M. Ammerman, Trustees; Trust for
Benefit of John M. Gambrill, Elmo H. Denton, H.M. Ammerman,
Trustees, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 86-1216.
 United States Court of Appeals, Fourth Circuit.
 Argued March 3, 1987.
Decided June 4, 1987.
 
 Before WINTER, Chief Judge, ERVIN, Circuit Judge, and YOUNG, United States District Judge for the District of Maryland, sitting by designation.
 Thomas Joseph O'Rourke (Neill, Mullenholz and Shaw, on brief), for appellants.
 Elaine F. Ferris, Tax Division, Department of Justice (Roger M. Olsen, Assistant Attorney General; Michael L. Paup and Ann Belanger Durney, Tax Division, Department of Justice, on brief), for appellee.
 PER CURIAM:
 
 
 1
 Taxpayers are limited partners in the Alban Towers Limited Partnership, which was formed with the stated purpose of owning and operating the Alban Towers apartment complex. During the tax years 1975-1979, the property operated at a substantial loss, and taxpayers claimed their allocable shares of the losses as deductions on their income tax returns. The Commissioner of Internal Revenue disallowed the deductions on the ground that Georgetown University, and not the Limited Partnership, was the owner of Alban Towers for federal tax purposes. The Tax Court upheld the disallowance, and taxpayers appealed. We affirm.
 
 I.
 
 2
 Georgetown University purchased Alban Towers in 1973 to alleviate a student housing shortage, financing the $5,865,000 acquisition with funds borrowed from Chase Manhattan Bank, secured by marketable securities. Alban Towers required extensive repairs, and Georgetown incurred substantial renovation costs. These costs were not passed on to the student tenants because Georgetown wished to maintain rental parity between on-campus and off-campus housing.
 
 
 3
 Alban Towers operated at a loss of $253,033 for its fiscal year ended June 30, 1974, and $435,110 for the 1975 fiscal year. Concerned about these losses, Georgetown's treasurer, George Houston, proposed to appellants Harry Smith and Charles Gambrill the possibility of placing Alban Towers in a joint venture. Houston wished to eliminate the perceived negative impact of Alban Towers' losses on Georgetown by bringing in partners who would share the accounting losses, and by creating debts payable to Georgetown which would generate sufficient interest income to offset Georgetown's share of such losses. The parties negotiated the formation of Alban Towers Limited Partnership, with Georgetown University having a 20% interest as general partner.
 
 
 4
 On December 30, 1975, Harry Smith, Georgetown University, and Dorothy Gambrill executed a Limited Partnership Agreement with a retroactive effective date of July 1, 1975.[1] On December 31, 1975, Georgetown refinanced $4 million of the loan it had incurred to acquire Alban Towers, which refinancing was secured by a first mortgage on Alban Towers.[2] In order to obtain the mortgage, Georgetown was required to guarantee Chase Manhattan Bank that Georgetown would fund all operating deficits of the property and collateralize all budgeted yearly deficits of the property in excess of $200,000.
 
 
 5
 The Partnership Agreement required the limited partners to contribute $300,000, paid in five annual $60,000 installments, in return for an 80% interest in the partnership. Georgetown University was to transfer Alban Towers to the partnership in exchange for (1) a credit of $75,000 to its capital account, and (2) the partnership's debt obligation to Georgetown in the amount of $2,771,730,[3] and a 20% general partnership interest. The partnership's $2.77 million indebtedness to Georgetown was evidenced by a note, with payment of the principal due in one installment on July 1, 1985, and interest payable annually at a floating rate. The note and the Partnership Agreement provided that, if the partnership lacked sufficient funds to make a cash payment of interest on the note for any year, the interest would be treated as paid by the partnership to Georgetown, followed by the immediate contribution of such amount from Georgetown to the capital of the partnership. During the tax years at issue, 1975-1979, the partnership accrued interest on the indebtedness totalling $1,255,378, all of which was treated as paid.
 
 
 6
 The Agreement also required Georgetown to make nonrecourse loans to the partnership if it needed money for operating expenses. Operating loans made by Georgetown bore interest at prevailing rates, with the principal due ten years from the date each loan was executed. During 1976-1979, Georgetown made operating loans of $928,859 to the partnership, with the accrued, but unpaid, interest totalling $163,314.
 
 
 7
 The proceeds from any sale of Alban Towers were to be distributed in accordance with the respective interests of the general and limited partners. Georgetown, however, retained the right to sell, mortgage, convey and refinance Alban Towers. Moreover, Georgetown possessed the exclusive right to change the proportion of partnership interests held by the general and limited partners.
 
 
 8
 In particular, Georgetown could elect to redevelop Alban Towers after five years without prior approval of the limited partners. If it exercised this right, Georgetown would be deemed to have contributed the $2.77 million note, with all the accrued but unpaid interest, to the capital of the partnership. The partnership's obligation under the note would then be cancelled. Furthermore, Georgetown could require capital contributions from the limited partners to finance the redevelopment. The amount of the capital call was designed to decrease the limited partners' interest from 80% to 49%, and increase Georgetown's general partnership interest from 20% to 51%. If the limited partners failed to meet the capital call, they would forfeit their interests in the partnership, and full ownership of Alban Towers would revert to Georgetown.
 
 
 9
 After the partnership's formation, Georgetown continued to manage Alban Towers. All operating expenses were run through its accounting system and paid with its checks. Georgetown transferred funds to the partnership's checking account to cover the mortgage payments, and the partnership then wrote a check for each payment. A minimal balance was kept in the partnership's checking account.
 
 
 10
 Alban Towers continued to operate at a loss for each taxable year. By 1981, the limited partners had taken losses on their tax returns to the full extent of their respective bases. Having invested cash in the amount of $300,000, taxpayers claimed loss deductions totalling approximately $2.3 million during 1975-1979. The losses reflected interest accrued but unpaid on the partnership's indebtedness to Georgetown, interest on the mortgage, depreciation, and operating expenses.
 
 
 11
 The Commissioner disallowed the loss deductions on the ground that Georgetown, and not the partnership, was the true owner of Alban Towers. Taxpayers petitioned the Tax Court for a redetermination of the resulting deficiencies, contending that the partnership owned and operated Alban Towers. The Tax Court held that Georgetown retained the benefits and burdens of ownership, and it sustained the deficiencies determined by the Commissioner. Taxpayers appealed, contending first, that they are the tax owners of Alban Towers, and second, that even if this Court affirms the Tax Court's decision on ownership, there remain unresolved issues which should be remanded.
 
 II.
 
 12
 Taxpayers bore the burden of persuading the Tax Court that the Commissioner's determination of deficiencies was erroneous. Helvering v. Taylor, 293 U.S. 507, 515 (1935). Guided by the well-settled principle that the economic substance of a transaction, rather than its form, governs for tax purposes, Frank Lyon Co. v. United States, 435 U.S. 561, 572-73 (1978), the Tax Court concluded that taxpayers did not carry their burden of proving that Georgetown transferred ownership of Alban Towers to the limited partnership.
 
 
 13
 For federal income tax purposes, the term "sale" is given its ordinary meaning and is generally defined as a transfer of property for money or a promise to pay money. Commissioner v. Brown, 380 U.S. 563, 570-71 (1965). Whether a sale has occurred depends upon whether there has been a transfer of the benefits and burdens of ownership. Grodt & McKay Realty, Inc. v. Commissioner, 77 T.C. 1221, 1237 (1981). This is a factual determination. Id. Accordingly, the Tax Court's conclusion that the ownership of Alban Towers had not been transferred to the partnership during the tax years in question is subject to review under the clearly erroneous standard. See, e.g., Rice's Toyota World, Inc. v. Commissioner, 752 F.2d 89, 92 (4th Cir.1985) (whether a particular sale-leaseback transaction "is a sham is an issue of fact, and our review of the tax court's subsidiary and ultimate findings on this factual issue is therefore under the clearly erroneous standard"). Accord Boyter v. Commissioner, 668 F.2d 1382, 1388 (4th Cir.1981) ("It is generally held that whether a transaction lacks real substance and thus constitutes a sham is a question of fact reviewable only under the clearly-erroneous standard.").
 
 
 14
 Following the "benefits and burdens" test outlined in Grodt & McKay Realty, Inc., supra, the Tax Court considered the following factors in deciding whether a transfer of ownership had transpired: (1) whether legal title passed; (2) how the parties treated the transaction; (3) whether the purchaser bore the risk of loss or damage to the property; (4) whether the purchaser had any control over the property and, if so, to what extent; and (5) whether the purchaser acquired any equity in the property.
 
 
 15
 The Tax Court found that record title did not pass to the partnership. Although Georgetown executed a Declaration of Beneficial Ownership that described it as holding legal title to Alban Towers for the benefit of the partnership, this declaration was never filed because of Georgetown's concern that it would cloud its title to Alban Towers.
 
 
 16
 The Tax Court concluded that the manner in which the parties treated the transaction demonstrated that Georgetown retained the attributes of ownership. The limited partners made no attempt to restrict the use of Alban Towers as a dormitory, despite the fact that it was not operated in a profitable manner. Georgetown made all decisions with respect to operations, including the right to sell, mortgage, convey and refinance the property. All licenses, insurance, leases, and property tax returns relating to Alban Towers were in Georgetown's name, without disclosure of the partnership, as was the landlord registration form filed with the District of Columbia Rental Accomodations Office. With the exception of the $300,000 initial cash investment by the limited partners, Georgetown funded the operating deficits of Alban Towers, and it paid interest on the mortgage with money funneled through the partnership's checking account.
 
 
 17
 The Tax Court also found that Georgetown bore the risk of loss because it procured the insurance, funded the operating deficits, and bore the burden of legal action against tenants who violated their leases. With respect to the factor of control, the court noted that the partnership never attempted to change management, despite Alban Towers' continuous operating losses. The Tax Court deemed it particularly noteworthy that Georgetown, which purportedly held only a 20% interest in the property, had veto power over all decisions concerning Alban Towers.
 
 
 18
 Finally, the Tax Court found that taxpayers did not acquire an equity interest in Alban Towers. Georgetown shouldered the responsibility for the $4 million mortgage, no actual payments were made by the partnership on the $2.77 million note or the operating loans, and the Partnership Agreement was structured to allow taxpayers to abandon their debt obligation to Georgetown if it elected to redevelop Alban Towers, and forfeit only the $300,000 investment in the partnership. Thus it was determined that the partnership had purchased at most an option to obtain the right to participate in the future redevelopment of Alban Towers.
 
 
 19
 Based on these findings, the Tax Court concluded that Georgetown had not transferred the benefits and burdens of ownership to the limited partnership, and that taxpayers were not entitled to income tax deductions equalling 80% of the losses associated with Alban Towers.
 
 
 20
 Taxpayers argue that the Tax Court misapplied the benefits and burdens analysis because the court did not consider whether the limited partners enjoyed a reasonable possibility for profit independent of any tax benefits associated with their investment. See Grodt & McKay Realty, Inc., supra, 77 T.C. at 1238 (tax court considered which party received profits from the operation and sale of the property in its benefits and burdens analysis). Cf. Rice's Toyota World, Inc., supra, 752 F.2d at 91 (court must consider reasonable possibility for profit in determining whether a sale-leaseback transaction was a sham). Taxpayers contend that at all times, Alban Towers' fair market value exceeded their debt obligations, thus providing an economic incentive for the limited partners to meet their financial obligations and still reap a profit from any sale. They point to appraisals and a stipulation by the parties that if the property had been redeveloped in 1980, and sold for a given price, the limited partners would have achieved a return on their investment independent of tax considerations. Thus, they argue, the economic substance of the transaction mandates that it be deemed a sale for tax purposes.
 
 
 21
 Taxpayers' analysis, however, is made with the seeming clarity of hindsight, rather than from the perspective of the tax years in question. Evaluating the period from 1975 to 1979, the Tax Court found it inherently unbelievable that Georgetown University had relinquished 80% of its interest in Alban Towers to the limited partners in exchange for their cash investment of $300,000 plus the purported indebtedness. Georgetown retained the right to cause a decrease in the limited partners' interests through the capital call, which protected the University from having to distribute the proceeds of any sale according to an 80/20 split.
 
 
 22
 The amount of the capital call was based on a formula that included, among other items, the principal amount of the $2.77 million note adjusted by the lower of the following percentages: (i) the current yield of AAA bonds on the date of such adjustment, or (ii) the percentage change in the Consumer Price Index. Thus the amount of money which taxpayers would have to contribute in order to preserve their partnership interests and benefit from any redevelopment was based on fluctuating economic indices and impossible to ascertain during the tax years in question. "For debt to exist, the purchaser, in the absence of personal liability, must confront a situation in which it is presently reasonable from an economic point of view for him to make a capital investment in the amount of the unpaid purchase price." Estate of Franklin v. Commissioner, 544 F.2d 1045, 1049 (9th Cir.1976). Taxpayers had no personal liability for the nonrecourse mortgage or the nonrecourse loans from Georgetown, they made no actual payments on these loans, and they could not determine in advance whether the capital call would be made under circumstances that rendered it economically advisable to meet the call. Accordingly, the Tax Court correctly concluded that taxpayers' purported debt obligations did not provide them an equity interest in the property.
 
 
 23
 The transaction was structured to allow taxpayers to abandon the limited partnership at the end of five years, after reaping substantial tax savings. Georgetown paid the mortgage interest and guaranteed the loan. If the partnership could not make its interest payments on the $2.77 million note, Georgetown would treat the interest as paid. No payments of principal or interest were made on the note or the operating loans, and the Tax Court inferred that they were never intended to be made. If Georgetown chose to redevelop Alban Towers, it was required to contribute the note and all accrued but unpaid interest, and the partnership's obligation would be cancelled. Thus, after five years, the limited partners could refuse to meet the capital call, walk away from the deal, and forfeit only their initial $300,000 investment after profitting from the tax savings.
 
 
 24
 The Tax Court's analysis of the taxpayers' equity investment implicitly evaluated the possibility for profit inherent in the transaction. Its analysis revealed that the possibility was too contingent to give economic substance to the purported sale, especially when considered in conjunction with the other "benefits and burdens" factors outlined above.[4]
 
 
 25
 Based upon our review of the evidence, we cannot say that the Tax Court's subsidiary and ultimate factual findings are clearly erroneous. Accordingly, we affirm the Tax Court's determination that Georgetown University did not transfer ownership of Alban Towers to the limited partnership during the tax years in question.
 
 III.
 
 26
 Taxpayers assert that the Tax Court's opinion fails to resolve two issues specifically raised by the parties, and that we should remand for further consideration. The issues concern first, whether the interest obligations of the limited partners were deductible, and second, whether the partnership was engaged in a trade or business or held property for the production of income.
 
 
 27
 Notwithstanding this Court's affirmance of the holding that the partnership was not the tax owner of Alban Towers, taxpayers argue they nevertheless were entitled to deduct their pro rata share of interest expense. They contend that their obligation to make interest payments is premised on the Partnership Agreement, and these interest payments are deductible if the Agreement which created the interest obligation is valid, and if the debt on which the interest accrued is a valid debt.
 
 
 28
 Taxpayers assert that the Partnership Agreement obligated the limited partners to pay their share of the interest on the loan from Chase Manhattan Bank and on any operating loans made by Georgetown. As discussed above, however, the partnership was not responsible for the mortgage, and the Tax Court inferred that the partnership never intended to make payments on either the $2.77 million note or on the operating loans. The fact that the Partnership Agreement stated that the limited partners must pay interest pales against the reality that the transaction was structured so the limited partners did not have to make those payments.
 
 
 29
 Taxpayers are entitled to deduct interest on debt if it is genuine. The determination of whether a debt is genuine requires an examination of the nature of the debt in relation to the economic benefit to be derived from paying it off. See Odend'hal v. Commissioner, 748 F.2d 908, 913 (4th Cir.1984), cert. denied, 471 U.S. 1143 (1985) ("a taxpayer may not claim an interest deduction where he has neither personal liability nor economic incentive to pay" the debt). Taxpayers assert that the fair market value of Alban Towers exceeded their debt obligations, and therefore they had an economic incentive to pay off the debt and not abandon the collateral. The evidence reveals that, in fact, taxpayers had an economic incentive to abandon the collateral: they would forfeit only their $300,000 investment in the partnership, after having taken substantial tax write-offs against unrelated income. The Tax Court's opinion correctly resolved the propriety of allowing taxpayers to deduct the interest expense associated with Alban Towers.
 
 
 30
 The second issue on which appellants seek remand relates to an argument the Tax Court specifically held it need not address. The government raised an alternative argument for disallowing taxpayers' claimed deductions in addition to its contention that the partnership did not own Alban Towers. The government contended that operating expenses are deductible only if an activity was engaged in for profit in accordance with 26 U.S.C. Sec. 183, and this partnership was not such an activity. Because the Tax Court based its decision on the tax ownership issue, it did not need to reach the alternative argument.
 
 
 31
 Appellants submit that regardless of the tax ownership determination, they were entitled to deduct their pro rata share of operating expenses because the Partnership Agreement required them to share such expenses. Factors relating to the validity of this obligation are identical to those relating to the issue of whether appellants were entitled to deduct their pro rata share of interest expense. For the reasons stated above, appellants could prudently abandon their obligations under the Partnership Agreement. Accordingly, the Tax Court correctly upheld the Commissioner's disallowance of these deductions.
 
 
 32
 AFFIRMED.
 
 
 
 [1]
 When the Agreement was executed, the losses from Alban Towers totaled $254,735 for the period July 1 to December 31, 1975
 
 
 [2]
 The refinancing was nonrecourse, limiting liability to the property securing the loan
 
 
 [3]
 The figures in (1) and (2) total $2,846,730 and represent the difference between $6,846,730, which was Georgetown's original purchase price plus the cost it incurred to renovate Alban Towers, less the property's $4 million encumbrance
 
 
 [4]
 Taxpayers also argue that the Tax Court erred by ignoring basic principles of partnership law. They contend that the Tax Court based much of its finding that no sale had occurred on the respective duties of Georgetown and the limited partners regarding Alban Towers, and ignored the principles that: a limited partnership acts only through its general partner; a general partner has the right and the obligation to manage and control the partnership; and a general partner is liable for all debts of the partnership
 Several aspects of this transaction justified its being closely scrutinized. First, the form of the transaction created tax advantages that, because of Georgetown's general tax-exempt status, could not otherwise have been enjoyed. Second, there was a one-to-one identity between the purported seller of Alban Towers--Georgetown University--and one of the purported purchasers--also Georgetown, in its capacity as general partner. The Tax Court did not err by looking through the limited partnership structure to the underlying economic realities of the purported sale.